

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB - 7 2008

CLERK, U.S. DISTRICT COURT

By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| THERMACOR PROCESS, L.P, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:06-CV-605-A |
| | § | |
| BASF CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

On December 11, 2007, defendant, BASF Corporation, filed a

motion for summary judgment in the above-captioned action.

Plaintiff, Thermacor Process, L.P., responded on January 2, 2008.

Defendant replied on January 8, 2008.  Having considered the

motion, plaintiff's response, defendant's reply, the summary

judgment evidence, and applicable authorities, the court

concludes that the motion should be granted.

I.

Plaintiff's Claims[1]

Plaintiff alleged as causes of action that defendant: (1)

negligently misrepresented that it was competent and capable of

developing and manufacturing a product that would satisfy

_____

[1]Plaintiff's live pleading is its third amended complaint.

plaintiff's requirements; (2) fraudulently induced plaintiff to purchase and utilize defendant's product even though defendant knew or should have known that the product would not satisfy plaintiff's requirements and that it was an untried product in the application to which plaintiff proposed to use it; and (3) violated sections 17.46(b)(5) and (7) of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41-17.63, as amended ("DTPA"). The section 17.46(b)(5) claim is based on an alleged representation by defendant to plaintiff that the product supplied by defendant had characteristics and uses that it did not have; and, the section 17.46(b)(7) claim is based on plaintiff's contention that defendant represented to plaintiff that the product supplied by defendant was of a particular standard or quality or grade when, in fact, it was another.

## II.

### The Motion for Summary Judgment

Defendant maintains that: (1) the agreements between the parties preclude the recovery plaintiff seeks; (2) there is no evidence it made any misrepresentation to plaintiff; (3) there is no evidence that plaintiff actually or justifiably relied on any alleged misrepresentation; (4) there is no evidence that any of

2

the alleged misrepresentations was a proximate or producing cause of plaintiff's damages; (5) plaintiff cannot recover the damages it seeks because (i) defendant's terms and conditions expressly exclude the recovery sought and limit defendant's liability to the cost of replacement of any defective product, (ii) there was no "failure" at the two sites for which plaintiff seeks to recover damages, (iii) the future damages plaintiff seeks to recover are speculative and based on unidentified jobs with no reported "failure," and (iv) the economic loss rule bars each of plaintiff's claims; (6) to the extent plaintiff has any actionable claims, they are contract claims, not tort claims; and (7) the DTPA does not apply "because the set of transactions at issue between these sophisticated businesses was anticipated to exceed $500,000, and is thus exempt under the DTPA." Mot. at 4, subsection G.

III.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial

3

burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 256. To meet this burden, the nonmovant must "identify specific evidence in the record[] and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 (1986). See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

## IV.

## Analysis

An overview of pertinent facts established as a matter of law by the summary judgment record is as follows:[2]

Plaintiff manufactures pre-insulated piping systems for installation at commercial sites. One of plaintiff's products is steel piping that is installed for the distribution of high-temperature steam, condensate, and heated water. The pipe is surrounded by foam insulation which is held in place and protected by a polyethylene outer jacket. In 2004, plaintiff was

---

[2]The parties quibble over some of the facts recited in the overview, but, under one of the standards adopted by the Supreme Court, the facts are established as a matter of law. In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the Supreme Court said that the standard for granting a motion for summary judgment "mirrors the standard for a directed verdict," which is that "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id. at 250.

in urgent need of a product with which it could insulate the
high-temperature steel piping it installed for its customers.  It
was required by law to discontinue use of foam made by a company
called Stepan because it contained a chemical known as 141b.
Also, it decided that it wanted to convert to a spray-on process.
It attempted to use a Stepan spray-on foam product, but was not
satisfied.  A nonexistent product needed to be developed if
plaintiff's needs were to be met.

An official of plaintiff told defendant that defendant
should try to develop a product that would satisfy plaintiff's
high-temperature foam insulation needs.  Defendant knew what
plaintiff's needs were and believed it could develop such a
product.  In June 2004, defendant informed plaintiff that it had
done as the official requested (i.e., tried to develop a product
that would satisfy plaintiff's high temperature foam insulation
needs); and, defendant sent plaintiff data pertaining to the
product it had developed, the 17070 product.[3]  The heat testing

---

[3]On June 17, 2004, defendant sent an e-mail to Joe Keys, Jr.,
plaintiff's president, which read:

Hello Joe,

In my last conversation with your Dad [Keyes, Sr.], he indicated
that [defendant] should pursue the Hi-Temp spray.  It is done,
please find tech data sheet attached.  Please ask James Filer if
one drum of Resin will be enough for the trial.

(continued...)

done by defendant, which was disclosed to plaintiff, showed that the product softened at slightly over 390 degrees Fahrenheit, but did not show how well the product would perform over a length of time in installations such as plaintiff would be making. Each page of the data sheets defendant provided to plaintiff in June 2004 pertaining to the 17070 product informed plaintiff that it "should thoroughly test any application, and independently determine satisfactory performance before commercialization." Pl.'s App. at 203-207.

Before using defendant's product with its high-temperature piping, plaintiff performed tests calculated to disclose how well the foam would perform under certain temperatures as well as tests to determine whether the foam would apply properly to the pipe.[4] However, rather than to complete the testing, plaintiff

---

[3](...continued)
Regards, JW

(See attached file: EPR17070r.doc)

Pl.'s App. at 202.

[4]One test plaintiff conducted was the hot-oil test. An official of plaintiff testified that, in evaluating the results of the hot-oil test, plaintiff "could have been a little more critical[,]" Def.'s App. at 128, but decided that the foam would be satisfactory for application in its insulated pipe system. The hot-oil test ended on December 21, 2004. However, the test was not completed. In the words of plaintiff, "[t]he hot oil tests did not immediately reveal degradation and were not run long enough before the decision to use the [17070 product] to reveal that [the product] could not meet Thermacor's specifications." Pl.'s Br. at 7.

chose to go forward with a different product of defendant, the 17071 product, without first testing it at all.[5]  The technical information defendant provided to plaintiff about the 17071 product likewise admonished plaintiff that it "should thoroughly test any application, and independently determine satisfactory performance before commercialization."  Def.'s App. at 472-77.

Each order plaintiff placed for the 17071 product was acknowledged with a document informing plaintiff that the order was accepted subject to defendant's standard terms and conditions of sale, which provided, <u>inter alia</u>, that plaintiff "ASSUMES FULL RESPONSIBILITY FOR . . . TESTING AND DETERMINATION OF SUITABILITY OF PRODUCT FOR ITS INTENDED APPLICATION OR USE."  Def.'s App. at 340.  Plaintiff accepted defendant's product subject to those conditions.  Both parties expected plaintiff to satisfy itself from its testing whether the product supplied by defendant would satisfy plaintiff's high-temperature needs.[6]

_____

[5]The 17071 product was similar to the 17070 product, but "the 17070 has the cyclopentane [blowing agent] already mixed in it, and the 17071 is the first two components, the resin and isocyanate[,] but [it] does not have the cyclopentane."  Def.'s App. at 79.  In other words, "[plaintiff] (not [defendant]) would blend the 17071 product with cyclopentane purchased from a third party."  Def.'s Br. at 2.

[6]Defendant's internal records disclose that defendant was relying on plaintiff to conduct the "trial" (i.e., testing) mentioned in the June 17, 2004, e-mail message.  A call report dated July 6, 2004, discloses that a representative of defendant reiterated to plaintiff's representatives the

(continued...)

The court now considers each of plaintiff's theories of recovery and the grounds of defendant's motion in the context of the foregoing established facts.

A.    Plaintiff's Negligent Misrepresentation Claim.

The heart of plaintiff's negligent misrepresentation claim was alleged by plaintiff in the following words:

> At all times leading up to Thermacor's decision to purchase insulating foam material from BASF, BASF through its sales representative Williams, represented to Thermacor, its agents and employees, that it was competent and capable of developing and manufacturing a spray-on product that would tolerate the temperature required by Thermacor's high temperature systems. In fact, as subsequent events demonstrated, BASF could not develop and manufacture a product that met Thermacor's stated needs and BASF misrepresented its ability to do so.

Third Am. Compl. at 9 ¶ 21.

---

[6](...continued)
importance to test the new product "without haste." Def.'s App. at 303. The same report noted that:

> Thermacor is currently utilizing a 141b system from Stepan in the rotational pipe application. It appeared the [sic] Rick's E-mails were delaying the testing. After discussions of the 141b crisis, it was agreed that testing should proceed immediately.

Id. at 304. Defendant's concerns relative to the testing by plaintiff of the product were again mentioned in defendant's internal records pertaining to calls by a representative of defendant on plaintiff on August 11, 2004 (id. at 308), September 17, 2004 (id. at 310), October 6, 2004 (id. at 312), October 22, 2004 (id. at 313-14), November 2, 2004 (id. at 315-16), November 11, 2004 (id. at 317-18), and December 22, 2004 (id. at 320-21). The summary judgment record makes clear that defendant was relying on plaintiff to perform tests to determine if defendant's product would serve plaintiff's needs and that plaintiff was aware of that reliance.

The elements for a negligent misrepresentation claim under

Texas law are as follows:

> (1) the representation is made by a defendant in the
> course of his business, or in a transaction in which he
> has a pecuniary interest; (2) the defendant supplies
> "false information" for the guidance of others in their
> business; (3) the defendant did not exercise reasonable
> care or competence in obtaining or communicating the
> information; and (4) the plaintiff suffers pecuniary
> loss by justifiably relying on the representation.

Federal Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442

(Tex. 1991) (adopting section 552 of the Restatement (Second) of

Torts).  The type of false information required to prevail is a

misstatement of existing fact, not a promise of future conduct.

Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.--

Houston [14th Dist.] 1999, pet. denied).  "A promise to act or

not to act in the future cannot form the basis of a negligent

misrepresentation claim."  Roof Sys., Inc. V. Johns Manville

Corp., 130 S.W.3d 430, 439 (Tex. App.--Houston [14th Dist.] 2004,

no pet.).

As to the allegation that defendant "could not develop and

manufacture a product that met [plaintiff's] stated needs," Third

Am. Compl. at 9, ¶ 21, plaintiff seems to have itself provided

summary judgment evidence contrary to that allegation.  In its

supplemental response, plaintiff argues that defendant "knew or

should have known how to increase the thermal stability of its foam to [plaintiff's] specifications." Supp. Resp. at 3.

More generally, there is no evidence in the summary judgment record that defendant supplied false information for the guidance of plaintiff in its business or that defendant failed to exercise reasonable care or competence in obtaining or communicating whatever information it communicated to plaintiff concerning defendant's product. The summary judgment record establishes on the subject under discussion that defendant undertook, at the request of one of plaintiff's officials, to pursue the development of a high-temperature foam that could be sprayed on. The summary judgment record establishes that defendant provided a product that, based on defendant's testing, defendant expected would meet plaintiff's needs; but, defendant made clear to plaintiff that plaintiff would be required to do its own testing in order to determine whether the product in fact met those needs. Plaintiff accepted defendant's product subject to that requirement.

The mere fact that defendant expressed optimism that it could develop a product that would satisfy plaintiff's needs does not constitute negligence. The summary judgment record establishes as a matter of law that the development of a product

that would satisfy plaintiff's needs was something in the nature

of a joint endeavor between plaintiff and defendant, with

defendant undertaking to develop such a product and with

plaintiff making whatever tests were appropriate to ensure itself

that the product in fact met its needs.

For the reasons given above, the court grants defendant's

motion as to plaintiff's negligent misrepresentation claim.

B.     Plaintiff's Fraudulent Inducement Claim.

The alleged facts upon which plaintiff bases its fraudulent

inducement claim are as follows:

> 25.   BASF was aware that it was unable and
> incompetent to develop and manufacture the insulating
> materials with the properties required by Thermacor.
> It was also aware that polyurethane was an untested and
> untried material in this particular application and
> that polyisocyanurate had been successfully used in
> this application for years by Thermacor and others.

> 26.   In spite of that knowledge, BASF, through its
> employee and agent Williams, fraudulently induced
> Thermacor to purchase and utilize its material, even
> though it knew or should have known that the material
> would not withstand the temperatures required by
> Thermacor and that it was an untried material in this
> particular application.  Those fraudulent
> representations induced Thermacor to purchase BASF's
> product, and it proximately resulted in damage to
> Thermacor in that the product has failed on multiple
> occasions at temperatures well below the temperatures
> at which BASF was aware that Thermacor high temperature
> systems operated and within months of installation.

Third Am. Compl. at 11.

12

To establish fraudulent inducement under Texas law, plaintiff must show that defendant made a material representation that was false, that defendant knew the representation was false or made it recklessly without knowledge of its truth, and that the representation was intended to be acted on, was relied upon, and caused injury. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998); Trenholm v. Ratcliff, 646 S.W.2d 927, 930 (Tex. 1983). Mere failure to perform is not evidence of fraud. Formosa, 960 S.W.2d at 48-49.

Plaintiff has failed to adduce summary judgment evidence in support of its fraudulent inducement claim. There is no summary judgment evidence that defendant "was aware that it was unable and incompetent to develop and manufacture the insulating materials with the properties required by [plaintiff]." Id. at 11, ¶ 25. Nor is there any summary judgment evidence that defendant induced plaintiff to purchase and utilize defendant's material with knowledge that the material would not withstand the temperatures required by defendant. As to the "untried material in this particular application" feature of the fraudulent inducement allegations, the summary judgment record establishes that both parties knew that the material developed by defendant for possible use by plaintiff was an untried material in

13

plaintiff's particular application. There was no misrepresentation on that subject.[7]

Some of the same reasons given above for why plaintiff's negligent misrepresentation claim is unmeritorious apply as well to plaintiff's fraudulent inducement claim. The summary judgment record disproves each of the claims.

C.   Plaintiff's DTPA Claims.

The final claims of plaintiff against defendant are brought under the DTPA. Section 17.46(b)(5) of the DTPA prohibits a representation that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Plaintiff alleged in its third amended complaint that defendant violated this section by representing that "the high temperature spray-on insulating material, the deterioration of which is the subject of this action, had characteristics and uses that it did not have . . . ." Third Am. Compl. at 12, ¶ 30. Plaintiff also alleged that defendant violated section 17.46(b)(7) of the DTPA, which prohibits "representing that goods or services are of a

_____

[7]Though its pleading is not entirely clear, plaintiff does not seem to have alleged that defendant made any assertion recklessly without knowledge of its truth. Even if plaintiff's complaint would support such a theory, as a matter of law plaintiff could not prevail thereon because both parties knew that the material developed by defendant was untried in plaintiff's particular application.

14

particular standard, quality, or grade . . . if they are of another."  Apparently the representations to which plaintiff refers in its DTPA allegations are the same representations to which it earlier referred in the third amended complaint when alleging its negligent misrepresentation and fraudulent inducement claims.  The DTPA claims should summarily be dismissed for the same reasons the earlier-discussed claims are being dismissed.[8]

D.    Other Grounds of Defendant's Motion.

The court does not need to direct its attention to the other grounds of defendant's motion for summary judgment in order to reach the conclusion that the motion should be granted. Defendant's motion should be granted for the reasons given in the foregoing parts of this opinion.  However, the court does touch briefly on some of the other grounds.

The court has given effect--to an extent--to the terms and conditions applicable to plaintiff's business relationship with defendant.  In the analysis of plaintiff's causes of action, the court has taken into consideration the fact that one of the terms and conditions of the relationship was that plaintiff assumed

---

[8]The court agrees with plaintiff that defendant has not shown that the $500,000 exception set forth in section 17.49(g) of the DTPA is applicable to this case.

responsibility for testing and determining suitability of defendant's product for plaintiff's intended application or use. Defendant goes further in its motion to urge that summary adjudication against plaintiff would be appropriate because the terms and conditions applicable to plaintiff's purchases from defendant expressly (1) disclaim representations, warranties and reliance, (2) negate causation, (3) exclude the remedies sought, and (4) waive the claims asserted. The court tentatively agrees with defendant, but has chosen not to engage in the kind of research and analysis that would enable the court to come to a firm judgment on that subject. The court does note that, by reason of the court's conclusion that plaintiff has not made out a case of fraudulent inducement, there is no reason why plaintiff should not be bound by all the terms and conditions.

The ground of the motion related to plaintiff's request for recovery of damages based on unidentified jobs seems to be resolved by a stipulation of the parties.

As to defendant's ground that plaintiff's claims sound, if at all, only in contract, the court notes that, if plaintiff had been able to establish its fraudulent inducement claim, perhaps it could have proceeded on the basis of a tort claim rather than a contract claim. Knowledge by plaintiff that it could not

succeed on a contract claim, bearing in mind the terms and conditions of the business relationship between the parties, undoubtedly explains why plaintiff chose to pursue tort causes of action rather than to seek recovery under a contract theory.

The court is not passing judgment on any of the grounds of defendant's motion that have not specifically been dealt with in this memorandum opinion and order.

V.

Order

For the reasons given above,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted; and

The court further ORDERS that all claims and causes of action asserted by plaintiff against defendant be, and are hereby, dismissed.

SIGNED February 7, 2008.

JOHN McBRYDE
United States District Judge

17